**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **ANTHONY STEELE,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | )    Case No. 06-cv-0313-MJR |
| | ) |
| **ALAN UCHTMAN, R. MOORE,** | ) |
| **DR. WILLIAM, JACK MOHR,** | ) |
| **C/O REYNOUR and PAM GRUBMAN,** | ) |
| | ) |
|     **Defendants** | ) |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

**I.**    **Procedural History**

Plaintiff, an inmate in the Menard Correctional Center, filed his complaint on April 21, 2006, pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights (Doc. 1). At threshold review, the Court found that Plaintiff stated one claim for relief: that Defendants acted with deliberate indifference to Plaintiff's serious medical needs in not providing him with glasses to correct his vision which caused headaches due to eye strain (Doc. 11).[1]

On September 29, 2008, Defendant Williams filed a motion for summary judgment (Doc. 44), and on October 7, 2008, Defendants Uchtman, Moore, and Grubman filed a motion for summary judgment (Doc. 49). On October 7, 2008, Defendants also filed notices pursuant to *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982), instructing Plaintiff on how to properly respond to a motion for summary judgment, and warning him of the consequences of failing to respond. Those

---

[1] In this order, Plaintiff was informed of his "continuing obligation to keep the Clerk and each opposing party informed of any change in his whereabouts . . . in writing and not later than seven (7) days after a transfer or other change in address occurs."

notices correctly informed Plaintiff, "Unless you respond to this motion with sworn statements which contradict important facts claimed by the defendants in their sworn materials, the Court will accept the defendants' uncontested facts as true" (Docs. 50 and 51). Despite this notice and warning, Plaintiff did not respond to either motion for summary judgment.[2] Pursuant to SDIL-LR 7.1(c), the Court considers Plaintiff's failure to respond an admission of the merits of the motion.

## II. Factual Background

In his complaint, Plaintiff alleges that his glasses were confiscated when he was transferred from the Cook County Jail to the Stateville Correctional Center; he was told to see an eye doctor when he got to Menard. Despite Plaintiff's requests for eye examinations and glasses, between August 1, 2005, and April 1, 2006, Defendants failed to treat him or provide him with glasses in violation of the Eighth Amendment. Plaintiff alleges that, without glasses, he suffered from headaches due to eye strain and from eye pain, as well as being precluded from certain activities.

The undisputed facts, as stated in Defendants' motions for summary judgment, indicate that, when Plaintiff arrived at Menard Correctional Center on September 13, 2005, he did

---

[2]Defendant Williams filed his motion for summary judgment on September 29, 2008, and Defendants Uchtman, Moore, and Grubman filed theirs on October 7, 2008. Under SDIL-LR 7.1(c) and the "prisoner mailbox rule," *see Edwards v. United States*, 266 F.3d 756 (7th Cir. 2001), Plaintiff was required to place his response in the outgoing prison mail system within thirty days of the filing of the motion for summary judgment, that is, by October 29, 2008, for Williams's motion, and by November 6, 2008, for Uchtman, Moore, and Grubman's motion. He did not do so. On February 17, 2009, Plaintiff filed with the Court a change of address and a motion for an extension of time to respond to the motions for summary judgment (Doc. 54). The Court granted the motion and ordered Plaintiff to respond to the motions for summary judgment by May 15, 2009. To date, Plaintiff has not responded to the motions. On May 22, 2009, a document sent to Plaintiff was returned to the Court as undeliverable with the notation, "Return to Sender; Inmate has been discharged or paroled" (Doc. 60). The Court received no notification from Plaintiff himself of a change of address.

not have eyeglasses because officials at Stateville Correctional Center had confiscated them (Doc. 45, Exh. B). In deposition, Plaintiff testified that, without glasses, he suffered from poor vision and headaches, and that over time these symptoms became worse (Doc. 45, Exh. B). Plaintiff was seen by Defendant Williams, an optometrist, on October 12, 2005. Plaintiff told Dr. Williams that he was scheduled to see the parole board the next day. Because of Plaintiff's potential release, Dr. Williams did not prescribe glasses that day, but told Plaintiff that if he was denied parole, he could reschedule the appointment. After eyeglasses are prescribed, it takes at least one month for the prisoner to receive them. Prison policy does not allow for eyeglasses to be sent to inmates who are no longer incarcerated (Doc. 45, Exh. D).

Plaintiff had appointments scheduled with Defendant Williams for November 16, December 2, and December 14, 2005, but Plaintiff did not attend those appointment because he was in disciplinary segregation and was unable to obtain a prison escort (Doc. 45, Exh. D). Plaintiff was scheduled to see Defendant Williams on December 28, 2005, but the appointment had to be rescheduled because Defendant Williams was ill (Doc. 45, Exh. D). Plaintiff was again scheduled for appointments with Dr. Williams on January 20 and February 15, 2006, but he could not attend these appointments because Menard was on lock down status. Defendant Williams cannot treat inmates while the facility is on lock-down unless the inmate receives a prison escort (Doc. 45, Exh. D).

An appointment was scheduled for February 17, 2005, but Dr. Williams canceled the appointment because he was ill. An April 19, 2006, appointment was scheduled, but Plaintiff could not attend because Menard was again on lock down (Doc. 45, Exh. D). Plaintiff finally saw Defendant Williams on May 29, 2006. Dr. Williams did not prescribe glasses, however, because

Plaintiff was scheduled for mandatory release the next week. Plaintiff was released from the Illinois Department of Corrections on June 6, 2006. Plaintiff returned to Menard on December 19, 2006, for parole violations. He was examined by Defendant Williams on February 5, 2007, and received glasses on April 17, 2007 (Doc. 45, Exh. D).

Defendant Williams avers that Plaintiff is only "mildly nearsighted" and "has better vision than the average person who is nearsighted" (Doc. 45, Exh. D). In Dr. Williams's opinion, Plaintiff's lack of eyeglasses would not have caused headaches or other "adverse symptoms" because Plaintiff was in segregation and "there would have been nothing for the Plaintiff to see that was far away enough to cause eye strain" (Doc. 45, Exh. D).

Defendant Grubman was the Healthcare Unit Administrator at Menard from August 1, 1993, to March 31, 2006 (Doc. 49, Exh. A). In that position, she oversaw the daily operations of the Healthcare Unit. Defendant Grubman did not diagnose medical conditions or determine a particular course of inmate treatment. She could not overrule the medical decisions of the medical doctors in the unit. She did not prevent Plaintiff from obtaining optometry care. She avers that her role in Plaintiff's case was limited to "seeing that optometry care was available to offender Steele and that he was scheduled for optometry services, which he repeatedly was" (Doc. 49, Exh. A).

Defendant Uchtman was the Warden at Menard from February 16, 2005, to June 1, 2006 (Doc. 49, Exh. B). He avers that he has no personal knowledge of Plaintiff's medical treatment, did not participate in his medical treatment and, as warden, did not have the authority to override the medical treatment of an inmate by a physician. Defendant Uchtman avers that, as warden, he was responsible for reviewing the responses made to prisoner grievances. He delegated this authority to members of his executive staff, and did not personally review or sign grievance

reports filed by Plaintiff regarding his medical treatment (Doc. 49, Exh. B).

Defendant Moore was a major in the North II segregation unit at Menard in 2005 and 2006. Plaintiff testified in deposition that he sued Defendant Moore because he was the supervisor of officers that Plaintiff claims failed to escort him to his optometry appointments. Plaintiff did not testify that Defendant Moore failed to escort him to the appointments (Doc. 45, Exh. B).

## III.    Legal Standards

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." ***Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005)**. The burden is upon the moving party to establish that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. ***Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004)**. A fact is material if it is outcome determinative under applicable law. ***Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ballance v. City of Springfield, Illinois, Police Dep't*, 424 F.3d 614, 616 (7th Cir. 2005); *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004)**.

> An opposing party has an obligation to respond to a motion for summary judgment. When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

**FED. R. CIV. P. 56(e)(2). *See also Heft v. Moore*, 351 F.3d 278, 283 (7th Cir. 2003) (summary**

**judgment is proper when plaintiff's case consists only of "factually unsupported claims;" when faced with evidence presented by moving party, plaintiff cannot rest upon pleadings alone, but must demonstrate specific facts that indicate existence of "genuine issue for trial"**).

IV. <u>Analysis</u>

Defendants Williams and Grubman argue that summary judgment should be granted in their favor because Plaintiff has not established that either Defendant acted with deliberate indifference to his serious medical needs. Defendant Uchtman argues that summary judgment should be granted in his favor because he was not personally involved in denying Plaintiff glasses. Defendant Moore argues that summary judgment should be granted in his favor because Plaintiff's claim against him is based on a theory of respondeat superior, not of personal involvement. Defendants Grubman, Uchtman, and Moore argue in the alternative that they are entitled to judgment in their favor based upon qualified immunity.

A. <u>Deliberate Indifference to Serious Medical Needs</u>

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, **429 U.S. 97, 104 (1976)**. In order to prevail on such a claim, the plaintiff must first show that his condition was "objectively, sufficiently serious" and that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, **414 F.3d 645, 652-653 (7th Cir. 2005) (citations and quotation marks omitted)**. With respect to the objective component of that inquiry, "[a] 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Foelker v. Outagamie County,* **394 F.3d 510, 512-513 (7th Cir. 2005)**

**(citation omitted)**.

Second, a prisoner must show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle*, **429 U.S. at 104 (quoting** *Gregg v. Georgia*, **428 U.S. 153, 173 (1976)**. "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, **780 F.2d 645, 652-53 (7th Cir. 1985)**. Negligence, gross negligence, or even "recklessness" as that term is used in tort cases, is not enough. *Id.* **at 653;** *Shockley v. Jones*, **823 F.2d 1068, 1072 (7th Cir. 1987)**. Put another way, the plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, **414 F.3d at 653**. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, ... and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer v. Brennan*, **511 U.S. 825, 842 (1994) (citations omitted)**.

1. **Defendant Williams**

Plaintiff alleges that Defendant Williams acted with deliberate indifference to his serious medical need for glasses. In response, Defendant Williams provides evidence that he was scheduled to see Plaintiff repeatedly between August 2005 and May 2006. Defendant Williams did not prescribe glasses in October 2005 because of the possibility that Plaintiff would be released on parole the day after the appointment. Plaintiff did not attend appointments in November and

December 2005 because he was in segregation; Defendant Williams had to cancel appointments in December 2005 and February 2006 because of illness; and Plaintiff could not attend appointments in January, February, and April 2006 because Menard was on institutional lock down. Plaintiff was finally able to keep an appointment with Dr. Williams on May 29, 2006, but Dr. Williams did not prescribe glasses at that time because Plaintiff was scheduled to be, and was, released on June 6, 2006. Because he did not respond to the motion for summary judgment, Plaintiff did not provide any evidence to counter the facts asserted by Defendants.

Defendant Williams is entitled to judgment as a matter of law because Plaintiff has failed to make a sufficient showing on an essential element of his case. Regardless of whether Plaintiff has a serious medical need, he has not come forward with any evidence that Defendant Williams acted with a sufficiently culpable state of mind to constitute deliberate indifference. Defendant Williams has provided evidence that the appointments were not recklessly or even negligently cancelled. Indeed, Defendant Williams diligently scheduled appointments for Plaintiff, but due to circumstances beyond his control, he was not able to examine Plaintiff to prescribe him glasses until one week prior to his mandatory release date. Plaintiff offers no evidence to indicate that Defendant Williams deliberately intended to harm Plaintiff by the delay in examining him, or that Defendant Williams denied him treatment with knowledge that he was exposing Plaintiff to a substantial risk of serious harm. Because Plaintiff has come forward with no evidence of deliberate indifference, the Court finds that summary judgment in favor of Defendant Williams is warranted.

### 2. **Defendant Grubman**

Defendant Grubman is likewise entitled to judgment as a matter of law because Plaintiff offered no evidence that she acted with the requisite state of mind to constitute deliberate

indifference to his serious medical needs in violation of the Eighth Amendment. Defendant Grubman averred that her only involvement with Plaintiff's medical care involved making sure that Defendant was scheduled to see the optometrist. Plaintiff was scheduled to see Dr. Williams in October, November, and December 2005, and January, February, April, and May 2006. For a variety of reasons not attributable to Defendant Grubman, Plaintiff was not able to attend these appointments. This evidence does not indicate that Defendant Grubman acted deliberately or recklessly in denying Plaintiff medical treatment or that she had knowledge that missing appointments exposed Plaintiff to a substantial risk of serious harm. Plaintiff has provided no evidence that would demonstrate Defendant Grubman acted with deliberate indifference to his medical needs. Thus, the Court finds that summary judgment in favor of Defendant Grubman is warranted.

### B. Personal Involvement

To be held individually liable for the deprivation of a constitutional right, a defendant must be "personally responsible for the deprivation." ***Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001)**. A defendant cannot be held liable in an action for violation of a civil right for wrongs in which he had no personal involvement. *See **Eades v. Thompson*, 823 F.2d 1055, 1063 (7th Cir. 1987) ("Each individual defendant can be liable only for what he or she did personally, not for any recklessness on the part of any other defendants, singly or as a group.")**. A defendant is personally responsible "if he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent." ***Chavez v. Ill. State Police*, 251 F.3d 612, 652 (7th Cir. 2001)**. Supervisory liability will be found only where the supervisor, "with knowledge of the subordinate's conduct, approves of the conduct and the basis for it." *Id.* **at**

651 (quoting *Lanigan v. Vill. of E. Hazel Crest, Ill.*, 110 F.3d 467, 477 (7th Cir. 1997)). "Supervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable." **Chavez, 251 F.3d at 651 (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7th Cir. 1988))**. "The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Id*.

### 1. Defendant Uchtman

Defendants Uchtman and Moore are entitled to judgment as a matter of law because neither of them were personally involved in denying Plaintiff's constitutional rights. Defendant Uchtman averred that he was not personally aware of Plaintiff's medical condition and that his only involvement with the issue would have been through the grievance process. He did not personally concur in any of the grievances; he delegated that task to a member of his staff. Plaintiff did not respond to the motion for summary judgment and thus has not produced any evidence suggesting that Defendant Uchtman was personally involved in depriving him of a constitutional right. Furthermore, supervisory liability cannot attach to Defendant Uchtman because Plaintiff offers no evidence that Defendant Uchtman knew of and facilitated, approved, condoned, or turned a blind eye to a constitutional deprivation by an employee.

### 2. Defendant Moore

Defendant Moore offers material facts showing that Plaintiff sued him because he was the supervisor of officers who failed to escort Plaintiff to his appointments. Plaintiff does not dispute these facts, nor does he provide any evidence that demonstrates Defendant Moore was personally responsible for depriving him of a constitutional right or that Moore knew of such a deprivation by a subordinate but facilitated, approved, condoned or turned a blind eye thereto.

Because Plaintiff has failed to come forward with evidence tending to demonstrate that either Defendant Uchtman or Defendant Moore was personally responsible or responsible as a supervisor for the deprivation of a constitutional right, summary judgment in their favor is warranted.

C.  **Unserved Defendants**

Two Defendants have not been served.  Requests for Waivers of Service were prepared and sent to Defendants Reynour and Mohr on August 2, 2007 (Doc. 13).  Both were returned unexecuted on August 14, 2007, because the USM-285 form did not list the full name of Defendant Mohr (Doc. 14), and because officials at Menard reported that no one by the name of Reynour was ever employed there (Doc. 15).  On March 31, 2009, the Court ordered the Clerk to prepare a second Request for Waiver of Service for Jack Mohr (Doc. 55).  On May 4, 2009, the United States Marshal filed a motion seeking an order from the Court directing the Illinois Department of Corrections to provide him with the last known address of Jack Mohr (Doc. 58).  The Court issued that order on May 12, 2009 (Doc. 59).  On May 19, 2009, the court received a letter from the Illinois Public Safety Shared Services Center indicating they could not locate any personnel records for Jack Mohr and asking the Court to provide a social security number so that he might be identified (Doc. 61).  The Court has no social security number for Mohr and, consequently, has not responded to the Illinois Public Safety Shared Services Center.

Plaintiff is entitled to rely on the Marshal to achieve service of process, but he must furnish sufficient information to identify Defendants.  ***Sellers v. United States,* 902 F.2d 598, 602 (7th Cir. 1990) (citations omitted)**.  For this reason, the Court will grant Plaintiff an additional 30 days to provide information to identify Reynour and Mohr.

## V. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant Williams's Motion for Summary Judgment (Doc. 44) and Defendants Grubman, Uchtman and Moore's Motion for Summary Judgment (Doc. 49). The Court **DISMISSES** these Defendants from this action with prejudice. Plaintiff shall provide information identifying Defendants Reynour and Mohr by **August 20, 2009**. The Court **WARNS** Plaintiff that failure to identify these Defendants by August 20 will result in their dismissal from this action for failure to prosecute.

**IT IS SO ORDERED.**

**DATED this 17th day of July, 2009**

> **s/Michael J. Reagan**
> **MICHAEL J. REAGAN**
> **United States District Judge**